RYAN K. YAGURA (SBN #197619)
ryagura@omm.com
XIN-YI ZHOU (SBN #251969)
vzhou@omm.com
CLARENCE A. ROWLAND (SBN #285409)
crowland@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

*Attorneys for American*
*Broadcasting Companies, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNILOC 2017 LLC,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>AMERICAN BROADCASTING<br>COMPANIES, INC.,<br><br>　　　　Defendant. | CASE NO: SACV 18-02056-GW-DFMx<br><br>**DEFENDANT AMERICAN BROADCASTING COMPANIES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: May 2, 2019<br>Hearing Time: 8:30 a.m.<br>Judge: Honorable George H. Wu<br>Room: 9D<br><br>Complaint Filed: November 17, 2018 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 2, 2019, at 8:30 am, or as soon as possible thereafter, in the Court Room of the Honorable George H. Wu, 350 West 1st Street, Courtroom 9D, Los Angeles, CA, 90012, Defendant American Broadcasting Companies, Inc. ("ABC"), by and through its attorneys, will and hereby does move this Court to dismiss Plaintiff Uniloc 2017 LLC's Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 25, 2019.

Dated:  April 4, 2019                    Respectfully submitted,

                                          By:  */s/ Xin-Yi Zhou*
                                               Xin-Yi Zhou

                                               *Attorney for American Broadcasting*
                                               *Companies, Inc.*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................... 1
II.  BACKGROUND ............................................................................ 2
     A.   Overview Of The '609 Patent ............................................ 2
     B.   The '609 Patent's Description Of Conventional Technology ............. 4
III. LEGAL STANDARD ...................................................................... 5
     A.   Motion To Dismiss ........................................................... 5
     B.   Patent Subject Matter Eligibility ......................................... 6
IV.  ARGUMENT ................................................................................ 8
     A.   All Claims Of The '609 Patent Are Directed To An Abstract Idea And A Natural Phenomenon ........................................... 8
     B.   The '609 Patent Lacks An Inventive Concept ................................ 10
          1.   Claim 1 Recites The Use Of Conventional Technology ......... 10
          2.   Claims 2 And 3 Recite Conventional Data Operations ........... 13
     C.   The SAC Fails To Allege A Plausible Factual Dispute Regarding Conventionality ................................................. 14
V.   CONCLUSION ............................................................................ 17

i

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**CASES**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ................................................................. 14

*Affinity Labs of Tex. v. DirecTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ................................................................. 13

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ........................................................................... 1, 6, 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 6

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
  915 F.3d 743 (Fed. Cir 2019) ................................................................... 14

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) .......................................................... 7, 9, 14

*Blackberry Ltd. v. Facebook, Inc.*,
  No. 18-1844-GW(KSx), 2018 U.S. Dist. LEXIS 221056 (C.D. Cal. Aug. 21,
  2018) ..................................................................................................... 7, 10

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ................................................................. 17

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ............................................................. 7, 12

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ...................................................................... 6

*Eclipse IP LLC v. McKinley Equip. Corp.*,
  No. 14-742-GW(AJWx), 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) ............... 7

*Elec. Power Group, LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ................................................................. 10

*Essociate, Inc. v. Clickbooth.com, LLC*,
  Case No. 13-01886, 2015 U.S. Dist. LEXIS 26757 (C.D. Cal. Feb. 11, 2015) ..... 8

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ................................................................... 12

*Intellectual Ventures I LLC v. Symantec Corp.*,
  100 F. Supp. 3d 371 (D. Del. 2015) ........................................................... 14

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
  107 F. Supp. 3d 677 (E.D. Tex. 2015) ......................................................... 9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012) ..................................................................................... 6

*MyMail, Ltd. v. ooVoo, LLC*,
  313 F. Supp. 3d 1095 (N.D. Cal. 2018) ...................................................... 13

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015) ............................................................. 6, 17

ii

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*PerkinElmer, Inc. v. Intema Ltd.*,
   496 F. App'x. 65 (Fed. Cir. 2012) ...........................................................8

5

*Prod. Ass'n Techs. LLC v. Clique Media Grp.*,
   No. 17-05463-GW(PJWx), 2017 U.S. Dist. LEXIS 217133 (C.D. Cal. Oct. 12,
   2017)..........................................................................................................7

6

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)................................................11, 13, 14

7

8

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017)..........................................................7, 15

9

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
   873 F.3d 1364 (Fed. Cir. 2017)........................................................9, 15

10

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016)..............................................................16

11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns., LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)................................................................7

12

13

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014).......................................................10, 13

*Univ. of Fla. Research Found., Inc. v. General Electric Co.*,
   916 F.3d 1363 (Fed. Cir. 2019)..............................................................14

14

15

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
   793 F.3d 1306 (Fed. Cir. 2015)..............................................................11

16

*Voit Techs., LLC v. Del-Ton, Inc.*,
   Appeal No. 2018-1535, 2019 WL 495163 (Fed. Cir. Feb. 8, 2019)...........7, 14, 15

17

18

19

20

21

22

23

24

25

26

27

28

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

In apparent recognition that the claims of U.S. Patent No. 8,407,609 (the "'609 Patent") were in jeopardy of being found patent ineligible under 35 U.S.C. § 101, Plaintiff amended its complaint twice to add a number of self-serving allegations that the claims of the '609 Patent are not conventional, contain an inventive concept, and provide a technological solution.  Notwithstanding these new allegations, which contradict the express language of the '609 Patent's specification, the recited claims are directed to measuring elapsed time of streaming videos using a combination of general-purpose computers and well-known applet software.  For this reason, no new characterization or allegation by the Plaintiff can save the '609 Patent's claims from invalidity under the two-step test articulated by the Supreme Court in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014).

First, the claims of the '609 Patent are directed to an abstract idea based on a natural phenomenon—measuring elapsed time.  Specifically, Claim 1 of the '609 Patent recites a "method for tracking digital media presentations" that results in the storage of "data . . . indicative of a cumulative time [a] corresponding web page was displayed by the user's computer."  Dkt. 25-1 ("'609 Patent") at Claim 1.  This idea of measuring elapsed time is not unique to computers and the Internet— humans have timed foot races for many hundreds of years, students have logged their reading time in reading journals, and factories have used punch cards to track the "cumulative time" worked by employees.  The '609 Patent does not apply this idea to solve a technological problem.  Instead, it tracks users' viewing time to facilitate "an increasing scale of payments for advertising displayed on a given [web] page."  *Id*. 7:42–52.  Thus, the patent simply applies an abstract concept to the context of Internet video streaming for addressing the business challenge of valuing advertisements.

Second, the claims of the '609 Patent fail to add an "inventive concept" to

1

the claimed idea.  Despite Plaintiff's new allegations in the Second Amended Complaint ("SAC"), the specification of the '609 Patent itself describes the patented invention as relying upon using a "computer . . . in a conventional manner" in combination with a timer "applet"—described as "generally refer[ring] to a software component that runs in the context of another program"—to measure elapsed time of videos streaming over the Internet.  *Id.* at 4:60, 12:67–13:3.  There is no disclosure of a new computer design or any improvement to computer functionality.  Instead, the '609 Patent repeatedly describes using "conventional" technology and "general purpose" computers—all of which the patent specification acknowledges were well-known—to track the cumulative amount of time a user has viewed a video on a web page.  These generic elements cannot transform an otherwise abstract idea into patent-eligible subject matter.

Because the claims of the '609 Patent are invalid as a matter of law, Defendant American Broadcasting Companies, Inc. ("ABC") respectfully moves to dismiss Uniloc's SAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   <u>BACKGROUND</u>

### A.   <u>Overview Of The '609 Patent</u>

Uniloc filed its SAC on March 12, 2019, asserting only one patent—the '609 Patent.  Dkt. 25.  The '609 Patent is entitled "System and Method for Providing and Tracking the Provision of Audio and Visual Presentations via a Computer."  '609 Patent at Cover.

The '609 Patent states that tracking "how long a particular viewer spent on a particular [web] page" watching a video can be useful for "appropriately valu[ing]" advertising space on the page.  *Id.* at 7:42–52, 12:5–10.  For example, where a "typical user watches . . . for ten minutes," the advertising space "may be worth more than where content play-back is typically for less than thirty-seconds."  *Id.* at 12:10–15.  To measure the length of time a user has viewed a video, the '609 Patent discloses using a "timer applet" to periodically report to a server whenever "a pre-

2

determined temporal period has elapsed," such as "every 15 seconds." *Id.* at 13:4–9, 13:24–30.  By logging the number of elapsed time periods during presentation of a video, the server can track "the total time spent on the web page presenting the presentation." *Id.* at 13:34–36.

Claim 1 of the '609 Patent recites a method of using a "timer" to measure the "amount of time" a "digital media presentation" is "streamed" to a "user's computer":

1. A method for tracking digital media presentations delivered from a first computer system to a user's computer via a network comprising:

*[a]* providing a corresponding web page to the user's computer for each digital media presentation to be delivered using the first computer system;

*[b]* providing identifier data to the user's computer using the first computer system;

*[c]* providing an applet to the user's computer for each digital media presentation to be delivered using the first computer system, wherein the applet is operative by the user's computer as a timer;

*[d]* receiving at least a portion of the identifier data from the user's computer responsively to the timer applet each time a predetermined temporal period elapses using the first computer system; and

*[e]* storing data indicative of the received at least portion of the identifier data using the first computer system;

*[ff]* wherein each provided webpage causes corresponding digital media presentation data to be streamed from a second computer system distinct from the first computer system directly to the user's computer independent of the first computer system;

*[g]* wherein the stored data is indicative of an amount of time the digital media presentation data is streamed from the second computer system to the user's computer; and

3

*[h]* wherein each stored data is together indicative of a cumulative time the

corresponding web page was displayed by the user's computer.

*Id*. at Claim 1 (annotated for ease of reference).

The '609 Patent includes two dependent claims.  Claim 2 depends on Claim 1, and requires that "the storing comprises incrementing a stored value dependently upon the receiving."  *Id*. at Claim 2.  Claim 3 depends on Claim 2, and requires that "the received data is indicative of a temporal cycle passing."  *Id*. at Claim 3.

### B.     The '609 Patent's Description Of Conventional Technology

The specification of the '609 Patent acknowledges that the technology used to implement the claimed method was well known by the filing of the patent.  For example, delivering digital media content, such as videos, to a user's computer via the Internet was well known:

The Internet is a global network connecting millions of computers and

linking users in more than 100 countries into exchanges of data. . . .  Each

Internet enabled computer is independent, such that its user can choose which

Internet services to use and which local services to make available to the

global Internet community.

There are many types of content available via the Internet, including . . .

video content.

'609 Patent at 1:40–50.  Similarly, providing web pages via the Internet was "conventional":

[A] user of a device 20 may request page 200 from content server 34 using a

browser application in a *conventional* manner.  Server 34 may provide page

200 to the requesting computer 20 in a *conventional* manner, optionally using

database 32 to populate page 200, for example.

*Id*. at 4:57–62 (emphases added).  Web pages were commonly viewed using "*commercially available* browsers" such as "Microsoft Internet Explorer," "Apple Safari," or "Google Chrome."  *Id*. at 3:43–47 (emphasis added).

4

Moreover, using a webpage to stream video from a second computer, distinct from a first computer, to a user's computer was also "conventional":

> In certain embodiments of the present invention, a user may select a populated presentation . . . .  In response thereto, *server 34* may request *file server 36* either stream or download the selected presentation to the requesting *user's computer 20*, such as via web page 200 in a *conventional manner*.

*Id.* at 5:20–25 (emphases added).  In this "conventional" arrangement, a website server ("server 34") facilities the streaming of video from a media server ("file server 36") to the "user's computer 20." *Id.*; *see also id.* at 4:57–62.

Use of "applets" or "plugins"—computer programs embedded into web browsers—to perform specific functionality was also well known.  The patent explains that commercially available browsers were known to include "browser plug-in applications" that "add[] a specific feature" to the browser.  *Id.* at 3:43–51.  Such application is also called an "applet," which "may *typically* [be] used to perform a specific function or task, *usually* narrow in scope."  *Id.* at 12:67–13:4 (emphases added).

The use of identifier data for tracking users' Internet browsing was also well known:  "The user may be identified by, for example, any of a number of *known methodologies*, such as the information the user used to login, [or] the user's IP address . . . ."  *Id.* at 7:38–41, 13:30–33 (emphasis added).

In short, the specification admits that the computer technology necessary to implement the claimed method of tracking elapsed time was well known before the filing of the '609 Patent.

## III.  **LEGAL STANDARD**

### A.  **Motion To Dismiss**

To survive a motion to dismiss, a plaintiff must plead factual allegations sufficient "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*,

5

556 U.S. 662, 678 (2009).  "Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 677.  There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*.  The Court is "not . . . required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

### B.  Patent Subject Matter Eligibility

Abstract ideas, laws of nature, and natural phenomena are excluded from the scope of patent eligibility under § 101 of the Patent Act.  *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012).  In *Alice*, the Supreme Court articulated a two-step test for determining whether the subject matter of a claim is patent-eligible:  (1) determine if the claim is directed to a patent-ineligible concept; and (2) if so, determine if the claim elements provide an "inventive concept . . . sufficient to ensure that the patent in practice amounts to significantly more" than the concept itself.  573 U.S. at 217–18.

Neither "stating an abstract idea while adding the words 'apply it,'" nor "limiting the use of an abstract idea to a particular technological environment," is enough for patent eligibility.  *Id*. at 223 (quotations omitted).  Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id*.  "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id*. at 221 (quotations omitted).

"Patent eligibility under 35 U.S.C. § 101 is an issue of law." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015).  In certain cases, this inquiry may involve underlying questions of fact relating to the conventionality of the claimed technology.  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed.

Cir. 2018).  However, when the patentee admits that a claim relies on conventional

technology, the question of patent eligibility should be resolved as a matter of law.

*Id.* at 1370 (finding claims 1-3 and 9 of the asserted patent ineligible based on

admission by the patentee that the underlying technology "existed for years before"

the patent); *Voit Techs., LLC v. Del-Ton, Inc.*, Appeal No. 2018-1535, __ F. App'x.

__, 2019 WL 495163, *2-3 (Fed. Cir. Feb. 8, 2019) (invalidating claims based on

admissions of conventionality in specification); *see also Content Extraction &*

*Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed.

Cir. 2014) (affirming Rule 12 dismissal); *Two-Way Media Ltd. v. Comcast Cable*

*Commc'ns., LLC*, 874 F.3d 1329, 1335 (Fed. Cir. 2017) (same); *Secured Mail Sols.,*

*LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) (same).

There are significant benefits of addressing patent eligibility early in the

litigation, at the pleadings stage:

> From a practical perspective, there are clear advantages to addressing section
> 101's requirements at the outset of litigation.  Patent eligibility issues can
> often be resolved without lengthy claim construction, and an early
> determination that the subject matter of asserted claims is patent ineligible
> can spare both litigants and courts years of needless litigation.

*Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-742-GW(AJWx), 2014

WL 4407592 , *6 (C.D. Cal. Sept. 4, 2014) (Wu, J.) (citation omitted).  Courts in

this district routinely resolve patent-eligibility challenges based on the pleadings.

*See*, *e.g.*, *Blackberry Ltd. v. Facebook, Inc.*, No. 18-1844-GW(KSx), 2018 U.S.

Dist. LEXIS 221056, at *24–32 (C.D. Cal. Aug. 21, 2018) (Wu, J.) (invalidating

claims that determine whether a "predetermined duration of time has elapsed" for

time stamping); *Prod. Ass'n Techs. LLC v. Clique Media Grp.*, No. 17-05463-

GW(PJWx), 2017 U.S. Dist. LEXIS 217133, *12–27 (C.D. Cal. Oct. 12, 2017)

(Wu, J.) (invalidating claims related to "method for disseminating product

information via the Internet"); *Essociate, Inc. v. Clickbooth.com, LLC*, No. 13-

01886, 2015 U.S. Dist. LEXIS 26757, *24 (C.D. Cal. Feb. 11, 2015) (invalidating claims related to "tracking" Internet activity).

## IV.   ARGUMENT

### A.   All Claims Of The '609 Patent Are Directed To An Abstract Idea And A Natural Phenomenon

The passage of time is "an eternal truth that exists in principal apart from any human action." *See PerkinElmer, Inc. v. Intema Ltd.*, 496 F. App'x. 65, 70 (Fed. Cir. 2012) (quotations omitted). The idea of measuring elapsed time has existed as long as civilization itself. Historical records in athletic contests, such as the fastest person to run a mile, have been kept at least since the mid-1800s. Even measuring elapsed media playback time was well known long before the advent of the Internet. For example, VCRs had timers that showed how long viewers were watching videotapes. To measure elapsed time, the '609 Patent simply discloses using an "applet"—a known type of computer application—to measure elapsed time and then transmit that information across a "network" to a computer that stores "data . . . indicative of a cumulative time the corresponding web page was displayed by the user's computer." *See* '609 Patent at Claim 1. Thus, for at least these reasons, there can be no reasonable dispute that the claims of the '609 Patent are directed to the abstract idea and natural phenomenon of measuring elapsed time.

The timing approach claimed by the '609 Patent—counting the number of times "a predetermined temporal period" has elapsed (Claim 1, Element [d])—has been around for hundreds of years as well. The "Big Ben" above the Palace of Westminster has rang every 15 minutes for 160 years—*i.e.*, each time "a predetermined temporal period" has elapsed. Without looking at the clock, a person can track the passage of time by counting the occurrences of the clock's quarterly chime. A metronome produces a clicking sound at a predetermined time interval; one can determine the length of a music note by counting the number of clicks. Indeed, before watches and clocks, people kept time using hourglasses by

8

tracking how many "predetermined temporal periods"—*i.e.*, how many turns of the hourglass—have elapsed.  Thus, using a "predetermined temporal period" to measure elapsed time is a basic human activity that cannot be patented.  *See Kroy IP Holdings, LLC v. Safeway, Inc.*, 107 F. Supp. 3d 677, 693 (E.D. Tex. 2015) ("conventional conduct that could be performed by a human being" is abstract), *aff'd*, 639 F. App'x 637 (Fed. Cir. 2016).

Applying the idea of measuring elapsed time to the technological context of Internet video streaming does not make this idea any less abstract.  The "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment.'" *Alice*, 134 S. Ct. at 2358.  In *Alice*, the Supreme Court found the application of an economic concept to a computer environment insufficient to render abstract claims patentable.  *See id*. at 2360.  Here, applying the claimed idea to Internet video streaming using multiple, networked computers—which is described as conventional by the specification—does not make the idea patent eligible.  *See id.*; *see also Berkheimer*, 881 F.3d at 1367 (invalidating claims that merely "limit[] the invention to a technological environment").

The '609 Patent does not apply the idea of measuring elapsed time to solve a technological problem.  Rather, it measures "how long a particular viewer spent on a particular page" to adjust the "scale of payments for advertising displayed on a given page."  '609 Patent at 7:42–52.  Using the popularity of a display to value advertisement is a common business challenge that is not rooted in computer technology—it applies equally to televisions, newspapers, and magazines.  Thus, because the '609 Patent does not "attempt to solve a challenge particular to the Internet," but instead uses computers for "the performance of an abstract business practice," it is not eligible for patent protection.  *See Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1374–75 (Fed. Cir. 2017).  Indeed, the focus of the '609 Patent's claims is on the use of computers as a tool to measure viewing

time, not to improve the computer functionality itself. *See Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1351–52 (Fed. Cir. 2016) (claims "requiring the collection, analysis, and display" of "time stamped" data are ineligible because "the focus of the claims is not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools").

The claims at issue in this case are similar in concept to other claims invalidated by the Federal Circuit and this Court. For example, in *Ultramercial, Inc. v. Hulu, LLC*, the Federal Circuit invalidated a claim reciting an eleven-step process "for distributing copyrighted media products over the Internet where the consumer receives a copyrighted media product at no cost in exchange for viewing an advertisement." 772 F.3d 709, 712 (Fed. Cir. 2014). The claim asserted in *Ultramercial* tracks in "an activity log" the "total number of times which [a] sponsor message has been . . . presented," and uses that information to facilitate the presentation of music or video to the user. *See id.* The Federal Circuit held that the "use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter." *Id.* at 716. In *Blackberry*, this Court invalidated claims that covered the time stamping of electronic messages by tracking "whether a predetermined duration of time has elapsed." 2018 U.S. Dist. LEXIS 221056, at *25, *30–31. The Court found the claims to be directed to a long-standing, abstract idea. *Id.* Here, the idea of tracking elapsed time for video streaming is no less abstract than *Ultramercial's* tracking of advertisement viewing or *Blackberry's* tracking of time durations for message stamping.

Using computers and the Internet to measure elapsed time does not render the idea patentable. Thus, because the claims of the '609 Patent are directed to an abstract idea and natural phenomenon, they fail the first step of the *Alice* test.

### B. The '609 Patent Lacks An Inventive Concept

#### 1. Claim 1 Recites The Use Of Conventional Technology

The '609 Patent's specification explains that each "'computer,' as referred to

herein, refers to a *general purpose computing device*." '609 Patent at 3:11–14 (emphasis added).  Claim 1 recites a method of using these general-purpose computers to stream a "digital media presentation" to the user, and using a "timer applet" to measure the "cumulative time the corresponding web page was displayed by the user's computer."  *Id.* at Claim 1.  The recited elements, both individually and as an ordered combination, cannot constitute an inventive concept because they use only conventional computer technology.  *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018) ("an invocation of [already-available] computers and networks is not enough to establish the required 'inventive concept' in application").

The fact that Claim 1 requires operation of three computers does not satisfy the second part of the *Alice* test because use of such general-purpose computers cannot qualify as an inventive concept.  *See Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1334 (Fed. Cir. 2015) (collecting cases where courts have found "claims to be ineligible despite the recitation of a general purpose computer or the Internet").  The specification expressly acknowledges that the claimed three-computer arrangement—a web server controlling a content server to transmit videos to a user's computer—is well known.  For example, the patent describes "server 34" requesting "file server 36" to stream content to "user's computer 20" as "conventional."  '609 Patent at 5:20–25; *see also id.* at 4:57–62 (describing a "conventional" arrangement of "server 34" using "database server 32" to transmit content to "computer 20").  And the use of multiple computer servers is also irrelevant to the claimed invention—the specification explains that the disclosed tracking method operates in "a substantially same manner. . . regardless of whether the content data is streamed from an operator's computer system 30 or a third party's computer system."  *Id.* at 12:46-55.  Thus, using a conventional arrangement of general-purpose computers to stream media cannot qualify as an inventive concept.

Nor does any other claim limitation save the '609 Patent claims. The specification admits that the use of software programs embedded in web browsers to perform specialized functions was conventional. It describes "applets" as preexisting technology: "'Applet,' as used herein, generally refers to a software component that runs in the context of another program [such as] . . . a web browser. Such an applet may *typically* [be] used to perform a specific function or task, *usually* narrow in scope." *Id*. at 12:67–13:4 (emphases added). The specification's use of the words "typically" and "usually" indicates that it is referring to known technology. In addition, the specification acknowledges that "plug-in applications" that "add[] a specific feature . . . to a browser" were already included in "*[c]ommercially available* browsers." *Id*. at 3:38–51 (emphasis added). Thus, using an "applet" to perform a particular function cannot qualify as an inventive concept. *See id.* at Claim 1, Elements [c]–[d].

The specification also admits that using "identifier data" to track user behavior was well known: "The user may be identified by, for example, any of a number of *known methodologies*, such as the information the user used to login, the user's IP address, the user's response to an identifying query, or the like." *Id*. at 13:30–33; 7:38–41; Claim 1, Elements [b], [d], [e]. It acknowledges that commercial web browsers already used identifier data. For example, identifier data can take the "form of a cookie" which is "a message provided to a web browser by a web server" that is stored "in a data or text file." *Id*. at 13:16–18.

Elements [d], [e], [g], and [h] of Claim 1 include steps of labeling applet information as identifier data, and transmitting and storing the data over the Internet to facilitate the tracking of elapsed time. *Id*. at Claim 1. There is nothing inventive in these basic computer operations of transmitting, receiving, and storing data. *See*, *e.g.*, *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613–14 (Fed. Cir. 2016) ("basic computer functions such as sending and receiving data" are not inventive concepts); *Content Extraction*, 776 F.3d at 1348–49 (collecting and storing data in

12

memory are not inventive concepts); *Ultramercial*, 772 F.3d at 717 ("[T]he transfer of content between computers is merely what computers do . . . ."). In fact, the patent admits that user data can be tracked and stored using off-the-shelf, "*[c]ommercially available* server log file analysis applications." *See* '609 Patent at 11:44-46 (emphasis added).

The '609 Patent describes neither a new computer design nor any improvement to existing computer technology, but merely relies on "an invocation of [already-available] computers and networks" to implement an abstract idea. *SAP*, 898 F.3d at 1170. Accordingly, Claim 1 fails the second step of the *Alice* test by lacking an inventive concept.

### 2. <u>Claims 2 And 3 Recite Conventional Data Operations</u>

Dependent Claims 2 and 3 fare no better than Claim 1. Claim 2 adds to Claim 1 the requirement that "storing comprises incrementing a stored value dependently upon the receiving." "Incrementing" is nothing more than "adding" and is a routine and conventional operation, whether performed by a human or a general-purpose computer. And using a computer to receive and store data has long been held to be non-inventive. *See*, *e.g.*, *Affinity Labs of Tex. v. DirecTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (generic storing and transmitting limitations did not provide an inventive concept).

Claim 3 adds to Claim 2 that "the received data is indicative of a temporal cycle passing." The specification provides an example of tracking media playback with a temporal cycle: "At each expiration of a timer, such as *every 15 seconds*, a table entry may be made" in a table stored in a general-purpose computer. '609 Patent at 7:30–41 (emphasis added). Thus, Claim 3 simply specifies that the stored timing data will be updated periodically, for example, every 15 seconds. *See id.* Such periodic updating of data is routine and conventional. *See*, *e.g.*, *MyMail, Ltd. v. ooVoo, LLC*, 313 F. Supp. 3d 1095, 1110 (N.D. Cal. 2018) (invalidating claims "directed toward updating data stored on a computer via the Internet"); *Blackberry*,

1  2018 U.S. Dist. LEXIS at *27–31 (invalidating claims directed toward measuring a

2  "predetermined duration of time"); *Intellectual Ventures I LLC v. Symantec Corp.*,

3  100 F. Supp. 3d 371, 390, 394 (D. Del. 2015) (invalidating claims requiring

4  "automatically reviewing the e-mail message after a specified time interval").

5  Claims 2 and 3 therefore also fail *Alice* step two.

## C.   The SAC Fails To Allege A Plausible Factual Dispute Regarding Conventionality

8        Since *Alice*, the Federal Circuit has affirmed the invalidation of dozens of

9  patents for claiming ineligible subject matter.  Many of such dismissals occurred at

10 the pleadings stage; only in rare circumstances have courts identified a factual

11 dispute regarding conventionality that requires discovery.  *See*, *e.g.*, *Aatrix*

12 *Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1126 (Fed. Cir.

13 2018); *Berkheimer*, 881 F.3d at 1368–69.

14       In *Berkheimer*, the Federal Circuit affirmed the invalidation of several claims

15 for claiming ineligibility subject matter, and identified a factual dispute for other

16 claims because the specification alleged that the claimed invention improved

17 computer functionality.  *See* 881 F.3d at 1368–70.  Critically, the Court found *no*

18 factual dispute where the patentee admitted that the underlying technology "existed

19 for years before" the patent.  *Id*. at 1370.  Since *Berkheimer* and *Aatrix*, the Federal

20 Circuit has affirmed Rule 12 dismissals based on patent ineligibility for several

21 cases in which, like the '609 Patent, conventionality cannot be disputed.  *See, e.g.,*

22 *SAP*, 898 F.3d at 1169–70; *Athena Diagnostics, Inc. v. Mayo Collaborative Servs.,*

23 *LLC*, 915 F.3d 743, 755–56 (Fed. Cir. 2019); *Voit Techs., LLC v. Del-Ton, Inc.*,

24 Appeal No. 2018-1535, __ F. App'x. __, 2019 WL 495163, *3 (Fed. Cir. Feb. 8,

25 2019); *Univ. of Fla. Research Found., Inc. v. General Electric Co.*, 916 F.3d 1363,

26 1368–69 (Fed. Cir. 2019).

27       Simply including a conclusory allegation of an "inventive concept," as

28 Uniloc has done in the SAC, is not enough to save the claims.  In *Voit Tech.*, the

plaintiff alleged that the asserted patent "improves the efficiency of transmitting high resolution data" and thus is "directed to a technological improvement." 2019 WL 495163, at *2-3. The Federal Circuit found these allegations insufficient because "the specification demonstrates that the Asserted Claims are directed to use of generic computer components performing conventional . . . techniques to carry out the claimed invention." *Id*. Like the claims invalidated in *Voit Tech.*, the '609 Patent's specification admits that the claimed invention relies on generic computer components and conventional technology. *See, e.g.*, '609 Patent at 3:11–14, 3:38–51, 5:20–25, 12:67–13:4.

In an attempt to create a factual dispute, Uniloc amended its complaint to add seven paragraphs of new allegations aimed at manufacturing an "inventive concept." *Compare* Dkt. 13 at ¶¶ 11-14 *with* Dkt. 25 at ¶¶ 11-21. Uniloc's attempt fails because, "[i]n ruling on a 12(b)(6) motion, a court need not accept as true allegations that contradict . . . the claims and the patent specification." *Secured Mail Sols.*, 873 F.3d at 913 (citation and quotation omitted).

First, the SAC's allegations regarding the technological problem addressed by the patent are entirely divorced from the claim language. The SAC alleges that the '609 Patent addresses the problem of "identify[ing] and locat[ing] content of a particular type and relating to a particular subject" on the Internet. Dkt. 25 at ¶¶ 13–15. The claims of the '609 Patent, however, do not recite any step relating to finding content. *See* '609 Patent at Claims 1–3. Rather, the claims assume the content is already found and only describe the provision of content. *Id*. The SAC also alleges that the claimed invention allows a user to "stream [a] presentation from the same point no matter where the user left off." Dkt. 25 at ¶ 16. This again contradicts the express language of the claims, which recites tracking the "cumulative time" of display, not the point where the user has left off. *See* '609 Patent at Claim 1. The patent neither describes nor claims tracking a user's stopping point, but instead uses cumulative viewing time to value advertisements.

*See id*. at 7:41-52, 12:5–15.  Thus, the SAC's new allegations regarding the alleged technological problem are not plausible.  *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

Second, the SAC alleges an "inventive concept" by merely parroting language from the patent.  *See* Dkt. 25 at ¶¶ 17–20.  For example, Uniloc identifies an alleged "inventive concept" by paraphrasing certain limitations of Claim 1:

> [C]laim 1 of the '609 patent is directed to a method for providing and tracking digital media presentations using a web page, identifier data and a timer applet originating at a first computer system to track and responsively stream a digital media presentation from a second computer system that can be viewed by a user at the user's computer.  Moreover, a person of ordinary skill in the art would understand that claim 1 of the '609 patent contains that corresponding inventive concept.

*Id.* at ¶ 20.  As explained above, all of these elements—the use of general-purpose computers, streaming digital media through web pages, the use of applets to perform specific functions, and the tracking of users with identifier data—were admitted by the specification as well known.  *See* Sections II.B and IV.B.1.  In particular, using "first" and "second" computers to stream videos cannot constitute an "inventive concept" because this arrangement is admitted by the specification to be both conventional and irrelevant to the claimed invention.  *See* '609 Patent at 4:57–62 and 5:20–25 (describing three-computer arrangement as "conventional"); 12:46-55 (stating that tracking operates in the "substantially same manner" whether content is streamed directly or through third party).  Thus, the specification refutes the SAC's allegation that "the claimed invention was a departure from the conventional ways of providing presentations on the Internet at the time."  Dkt. 25 at ¶ 19.  The claims of the '609 Patent therefore lack an inventive concept.  *See*

16

*Berkheimer*, 881 F.3d at 1370; *Voit Tech.*, 2019 WL 495163, at *2–3.

The only part of Uniloc's alleged "inventive concept" that the specification does not expressly admit as well known is using an applet *as a timer*.  The SAC alleges that acquiring "knowledge" of "how long a particular view spent on a web page" was "not conventionally available."  Dkt. 25 at ¶ 18 (citing '609 Patent at 13:24–14:8).  However, because the idea of measuring elapsed time is ineligible for patenting, that idea cannot qualify as an inventive concept.  *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").  Indeed, not only does the specification fail to describe a timer applet as inventive, it also fails to provide any description of its implementation—an implicit recognition that the skilled artisan would already understand how to do so.  *See*, *e.g.*, '609 patent at 12:67–13:9.

The claims of the '609 Patent attempt to mechanize the process of measuring elapsed time by using generic computer technology.  There is no factual dispute regarding conventionality, and the question of patent eligibility is purely an issue of law.  *OIP Techs.,* 788 F.3d at 1362.  Because the claims of the '609 Patent fail both steps of the *Alice* test, they are invalid as a matter of law.

## V.   <u>CONCLUSION</u>

The claims of the '609 Patent are directed to the abstract idea of measuring elapsed time and fail to recite any inventive concept.  As such, these claims are invalid under § 101 of the Patent Act.  ABC therefore respectfully requests that the Court dismiss the Second Amended Complaint.

1    Dated:  April 4, 2019                    Respectfully submitted,

2                                             By:  */s/ Xin-Yi Zhou*

3
                                             RYAN K. YAGURA (SBN #197619)
4                                            ryagura@omm.com
                                             XIN-YI ZHOU (SBN #251969)
5                                            vzhou@omm.com
                                             CLARENCE A. ROWLAND (SBN
6                                            #285409)
                                             crowland@omm.com
7                                            **O'MELVENY & MYERS LLP**
                                             400 South Hope Street
8                                            Los Angeles, California 90071-2899
                                             Telephone:  (213) 430-6000
9                                            Facsimile:  (213) 430-6407

10                                           *Attorneys for American*
                                             *Broadcasting Companies, Inc.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28